EEN: USAO 2025R00227

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED ✓   ENTERED ___
LOGGED ___   RECEIVED ___
9:40 am, May 21 2025
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ____M.D.____ Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. 8:25-mj-01348-AAQ |
| | * | |
| AARON L. CROOM, | * | **FILED UNDER SEAL** |
| | * | |
| Defendant | * | |
| | * | |

********

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Detective Christopher Edmund, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of a criminal complaint and arrest warrant for **AARON LEVET CROOM** for violations of 18 U.S.C. § 1112 (involuntary manslaughter); 36 C.F.R. § 4.23 (driving under the influence of alcohol); 36 C.F.R. § 4.2, assimilating Md. Transp. Art. § 21-901.1(a) (reckless driving); and 36 C.F.R. § 4.2, assimilating Md. Transp. Art. § 20-102 (leaving the scene of an accident resulting in death).

### AGENT BACKGROUND

2. I have been a law enforcement officer of the United States Park Police (USPP) since 2016. I am empowered by law to investigate and make arrests for violations of federal law, as well as violations of District of Columbia, Maryland, and Virginia law. I am currently assigned to the USPP Major Crimes Unit as a Criminal Investigator. I have received instruction from the Federal Law Enforcement Training Center in the identification of numerous criminal violations. I have completed the six-week Department of Interior Investigator Training Program. Additionally, I have completed a 2-week course of instruction in criminal investigations at the DC Metropolitan

Police Academy Investigator School. During my time as a law enforcement officer, I have been involved in the investigation of numerous types of criminal acts which include, thefts, assaults, sex crimes, and major traffic crashes which often involve fatalities in National Park Service jurisdictions within the District of Columbia, Maryland, and Virginia.

3. The information in this affidavit is based upon my observations and investigation, and the observations of other law enforcement officers. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all knowledge about this matter.

## PROBABLE CAUSE

4. On Friday April 18, 2025, at approximately 1:19 a.m., USPP Communications dispatched officers to what was initially described as a single-vehicle crash with children ejected. The location of the crash was the southbound Baltimore-Washington Parkway south of Route 197 in Prince George's County, Maryland. Officers arrived and observed a white Honda Pilot (herein referred to as Vehicle 2) that had left the roadway and crashed into the wood line. Vehicle 2 had been occupied by a family consisting of two adults and four juveniles. One juvenile (herein referred to as JV-1) had been ejected from the vehicle and was pronounced deceased on scene by Anne Arundel County Emergency Medical Services at 1:45 a.m. A second juvenile (JV-2) from Vehicle 2 was transported to Children's National Hospital and was pronounced deceased later that day, at 4:26 p.m. The remainder of the family, two adults and two juveniles, were transported to local hospitals with non-life-threatening injuries.

5. A black BMW X5 (Vehicle 1) was located approximately half a mile south of Vehicle 2, still on the southbound Baltimore-Washington Parkway in the lane of travel. Vehicle 1 had suffered heavy front-end damage, its airbags had been deployed, and it was disabled in the

roadway. Officers made contact with the driver, who was standing near Vehicle 1. He was identified by his West Virginia driver's license as Aaron Levet **CROOM**. **CROOM** told officers that he had been driving Vehicle 1. Officers noticed an odor of an alcoholic beverage emanating from **CROOM** and that **CROOM**'s eyes were bloodshot.

6. W-1 and W-2, the driver and passenger of another vehicle that stopped at the crash scene, both reported that they saw a large black SUV-style vehicle crash into the back of Vehicle 2, sending Vehicle 2 off the road and into the wood line. W-1 and W-2 further stated that the black SUV continued driving southbound rather than stopping at the scene of the crash. The physical description of the striking vehicle provided by W-1 and W-2 matched Vehicle 1. Moreover, later examination of Vehicle 1 revealed white paint chips matching Vehicle 2 transferred onto Vehicle 1's front end, as well as a piece of a muffler embedded in Vehicle 1's front grill. Vehicle 2 was missing part of its muffler.

7. W-1 and W-2 explained that Vehicle 1 had been swerving in and out of the lanes of travel before the accident, almost hitting other vehicles on the roadway. They had consciously and intentionally tried to maintain a safe distance from Vehicle 1 while traveling southbound, as they believed the operator to be showing signs of impairment. W-1 drove around Vehicle 1 to get ahead and away from the suspected impaired driver. W-1 explained that Vehicle 1 sped past them at a high rate of speed and then crashed into the back of Vehicle 2. W-1 saw the crash send Vehicle 2 off the roadway. W-1 stopped to check on the welfare of Vehicle 2's occupants. W-1 observed that Vehicle 1 did not stop, but instead left the scene of the crash and continued driving southbound. W-1 captured intermittent footage on their dash camera that showed Vehicle 2 leaving the roadway and Vehicle 1 leaving the scene.

8. **CROOM** initially told officers that he had not consumed any alcohol that night and

that he left the scene of the crash in an attempt to catch up with a dark-colored Hyundai Sonata that he stated he believed was involved. **CROOM** said he was unable to continue because his vehicle had become disabled. **CROOM** performed standardized field sobriety testing with the following results:

    a.    HGN[1] – 4/6

    b.    Walk and Turn[2] – 3/8

    c.    One Leg Stand[3] – 0/4

9. A telephonic warrant for **CROOM**'s blood to be drawn for testing was issued by a United States Magistrate Judge in the District of Maryland, and **CROOM** was transported to Luminis Health Doctors Community Medical Center, where two vials of blood were drawn. The District of Columbia Office of the Chief Medical Examiner analyzed the blood and determined it was positive for alcohol at a level of 0.10 grams of alcohol per 100 milliliters of blood.

10. After the blood draw at the hospital, I provided **CROOM** a courtesy ride to his mother's home in Washington, D.C. During the courtesy ride, I advised **CROOM** of his Miranda rights and he agreed to waive his rights and answer questions without having an attorney present. During the interview, which was recorded on my body worn camera, **CROOM** admitted that he had consumed some wine for a period of about two hours before driving and also confirmed that his vehicle, Vehicle 1, had struck Vehicle 2 from behind. **CROOM** stated that he had tried to engage his brakes when he saw that Vehicle 2 was braking but could not stop in time to avoid the collision.

---

[1] *See United States v. Horn*, 185 F. Supp. 2d 530, 537 (D. Md. 2002) for a description of the Horizontal Gaze Nystagmus Test ("HGN Test").
[2] *See Horn*, 185 F. Supp. 2d at 537–38 for a description of the Walk and Turn ("WAT") Test.
[3] *See Horn*, 185 F. Supp. 2d at 538 for a description of the One Leg Stand ("OLS") Test.

11. On May 5, 2025, a search warrant was obtained for Vehicle 1. Analysis of Vehicle 1's event data recorder showed that **CROOM** was traveling 82 m.p.h. in a 55-m.p.h. zone five seconds before impact, with no braking or steering indicated.

12. **CROOM** was driving under the influence of alcohol and driving recklessly when he struck Vehicle 2, killing JV-1 and JV-2.

13. The Baltimore-Washington Parkway is on lands within the special maritime and territorial jurisdiction of the United States in the District of Maryland, on National Park Service property.

14. Based on the foregoing facts, I respectfully submit there is probable cause to believe that **CROOM** has committed violations of 18 U.S.C. § 1112 (involuntary manslaughter); 36 C.F.R. § 4.23 (driving under the influence of alcohol); 36 C.F.R. § 4.2, assimilating Md. Transp. Art. § 21-901.1(a) (reckless driving); and 36 C.F.R. § 4.2, assimilating Md. Transp. Art. § 20-102 (leaving the scene of an accident resulting in death).

CHRISTOPHER EDMUND
Digitally signed by CHRISTOPHER EDMUND
Date: 2025.05.20 10:13:58 -04'00'

Det. Christopher Edmund
United States Park Police

Affidavit submitted by email and attested to me as true and accurate by telephone, consistent with Fed. R. Crim. P. 4.1 and 4(d) this __20th__ day of May 2025.

_____
Honorable Ajmel A. Quereshi
United States Magistrate Judge